1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL UNION,

                    Plaintiff,

          v.

ALBERTSONS, INC.,

                    Defendant.

CASE NO. C06-813JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion to dismiss or transfer venue from Defendant Albertsons, Inc. ("Albertsons") (Dkt. # 3) and a motion to remand this case to superior court from Plaintiff United Food and Commercial Workers International Union ("UFCW") (Dkt. # 13). The court has considered the papers filed in support and in opposition to the motions and has heard oral argument. For the reasons stated below, the court DENIES UFCW's motion to remand (Dkt. # 13) and GRANTS Albertsons's motion to dismiss (Dkt. # 3).

ORDER – 1

## II. BACKGROUND

In early 1996, UFCW conducted surveys of Albertsons's employees to determine if any of them had worked "off-the-clock" or for "unpaid time." Albertsons requested that UFCW turn over the results of the employee surveys, and UFCW refused. Albertsons claimed that UFCW and UFCW-affiliated local unions ("locals") had a duty to disclose such information under the locals' Collective Bargaining Agreements ("CBAs"). On September 9, 1996, Albertsons filed suit against UFCW and twenty locals in the United States District Court for the District of Idaho. Albertsons sought to obtain the unions' information regarding off-the-clock work by Albertsons's employees and to compel arbitration over any potential wage and hour claims. In its complaint, Albertsons alleged that the locals breached their CBAs with the company by failing to identify employees who reported off-the-clock time. Albertsons further claimed that UFCW tortiously induced the locals to breach those CBAs by withholding the information. Meanwhile, UFCW filed various wage and hour lawsuits on behalf of Albertsons employees. The Idaho District Court eventually consolidated the lawsuits under In re Albertson's, Inc. Employment Practices Litigation, MDL No. 1215.

On March 10, 1997, the Idaho district court ruled that it would hear the individual employee wage and hour claims, without referring them to arbitration. Three years later, the parties resolved the wage and hour litigation and in September 2000, the district court approved a comprehensive settlement agreement. At about the same time, the district court referred Albertsons's breach of contract claims against the locals to arbitration. Diamond Decl., Ex 7 at 1 (September 11, 2000 Order). The court stayed Albertsons's claims against UFCW for tortious interference, reasoning that such claims were "completely dependent" on whether Albertsons could prevail in its contract claims against the locals. Id.

ORDER – 2

In the first CBA arbitration, Arbitrator Richard Stratton construed the agreement between Albertsons and UFCW Local 555.  Although he recognized the similarity between Local 555's CBA and other locals' CBAs, he declined to consider agreements that were "not presently before him."  Diamond Decl., Ex. 7 at 17-18 (Arbitrator's Opinion and Award).  Arbitrator Stratton went on to determine that Local 555's CBA was patently ambiguous and that he would have to rely on extrinsic evidence to construe the terms.  Id. at 25.  Ultimately, he concluded that the contract language did not require Local 555 to report information about off-the-clock work to Albertsons if the workers voluntarily gave the information to the union.  Id. at 32.  Based on the Arbitrator's Opinion, Albertsons dismissed its breach of contract claims against several locals, including Local 555.  It also dismissed certain claims against UFCW.  Several other claims remain pending before the district court: 13 breach of contract claims against other locals, as well as the tortious interference claim against UFCW.

On May 22, 2006, UFCW filed the instant action in King County Superior Court, alleging that the still-pending Idaho litigation constitutes malicious prosecution.  Albertsons filed its notice of removal on June 12, 2006.  Albertsons now moves to dismiss the complaint on preemption grounds and UFCW moves to remand the action to state court.

## III.  ANALYSIS

**A.    Section 301 Preempts UFCW's Malicious Prosecution Claim**

UFCW argues that Albertsons's removal was improper because the malicious prosecution claim arises under state law and because there is no basis for diversity jurisdiction.  Albertsons contends that this court has subject matter jurisdiction because

ORDER – 3

section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185,[1] completely preempts UFCW's state law claim.

Section 301 establishes federal subject matter jurisdiction over disputes covered by a CBA and directs federal courts to fashion a uniform body of federal common law applicable to such disputes. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209-210 (1985). To that end, section 301 preempts a state law claim when its resolution requires the court to interpret a CBA, Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988), or is "inextricably intertwined with consideration of the terms of the labor contract." Lueck, 471 U.S. at 213. For example, in Dahl v. Rosenfeld, 316 F.3d 1074 (9th Cir. 2003), the Ninth Circuit held that section 301 preempted a malpractice claim where the court's determination of whether the law firm mishandled a grievance for the union would require it to resolve a disputed provision in the underlying CBA. Id. at 1077. Similarly, the Fourth Circuit held that section 301 preempted a union's tortious interference claim because the court would have to determine what constitutes breach of the labor contract to resolve whether the defendant-company induced such breach. Int'l United Mine Workers of Am. v. Covenant Coal Corp., 977 F.2d 895, 899 (4th Cir. 1992).

The court concludes that section 301 completely preempts UFCW's malicious prosecution claim because it requires interpretation of the underlying CBAs. To prevail on a malicious prosecution claim under Washington law, UFCW must show that Albertsons lacked probable cause in bringing an Idaho tortious interference claim. See Peasley v. Puget Sound Tug & Barge Co., 125 P.2d 681, 687 (Wash. 1942) (stating malicious prosecution claim elements). Whether Albertsons had probable cause requires the court to consider the elements of its tortious interference claim. To prevail on such a

---

[1]Section 301 reads, in part: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a).

ORDER – 4

1    claim, Albertsons would have to show, *inter alia*, that UFCW intentionally interfered

2    with a contractual relationship so as to cause breach.  See Thirsty's L.L.C. v. Tolerico,

3    137 P.3d 435, 437 (Idaho 2006) (stating tortious interference elements).[2]  Thus, whether

4    Albertsons had reason to believe that UFCW induced the locals to breach their CBAs

5    would require this court to determine what triggers breach of the signatories' contractual

6    rights and obligations in the first instance.  Accordingly, this court cannot resolve

7    UFCW's malicious prosecution claim without interpreting the underlying CBAs.  That

8    some of the CBAs are no longer the subject of dispute before the Idaho district court is

9    beside the point for purposes of determining section 301 preemption.

10           UFCW's contention that it has evidence of malice does not change this result.

11   UFCW alleges that it has testimonial evidence that "Albertsons was aware from the outset

12   of the Idaho lawsuit that its claims against [UFCW] . . . were groundless."  UFCW's

13   Opp'n at 4.  Although the court considers such evidence probative of whether Albertsons

14   acted with bad faith in bringing suit (a separate element of a malicious prosecution

15   claim), such evidence does not conclusively determine whether, at law, the suit was

16   groundless.  As stated above, this latter determination requires interpretation of the

17   underlying contracts.

18           UFCW argues that section 301 preemption should not apply because the court

19   need only "look to" and not "interpret" the CBAs in the underlying Idaho litigation.  See

20   Cramer v. Consolidated Freightways, 255 F.3d 683, 690-91 (9th Cir. 2001) ("[S]imply

21   because the court may have to consult the CBA . . . merely to discern that none of its

22   terms is reasonably in dispute does not require preemption.").  In support of this notion,

23   UFCW suggests that there cannot be any reasonable dispute as to the meaning of the

24   CBAs, given that Arbitrator Stratton already construed Local 555's CBA, which bears

---

[2]The court assumes, and the parties do not dispute, that Idaho law applies to
Albertsons's claims filed in Idaho district court.

ORDER – 5

substantial similarity to the remaining CBAs.  The court disagrees.  Arbitrator Stratton considered Local 555's CBA as patently ambiguous and turned to extrinsic evidence in rendering his decision.  Diamond Decl., Ex. 7 at 25.  The arbitrator's reliance on extrinsic evidence (e.g., past practices and bargaining history) strongly undermines UFCW's contention that contract construction of the CBAs is a simple matter of looking to undisputed terms.

Lastly, at oral argument, UFCW suggested that section 301 should not apply because UFCW is not a signatory to the CBAs in question.  The court finds UFCW's argument inconsistent with <u>Milne Employees Ass'n v. Sun Carriers</u>, 960 F.2d 1401, 1407 (9th Cir.1992), in which the Ninth Circuit upheld a non-signatory's removal of a section 301 claim to federal court.

Because the court concludes that section 301 preempts UFCW's malicious prosecution claim, removal of this action was proper.  Accordingly, the court DENIES UFCW's motion to remand.

**B.    UFCW Fails to State a Claim for Which Relief Can be Granted**

Having determined that the court has jurisdiction over the claim, the court now turns to Albertsons's motion to dismiss or transfer venue.  Albertsons argues that this court should dismiss UFCW's claim because the union's sole remedy is to file an unfair labor practice charge with the National Labor Relations Board ("NLRB").  In opposing Albertsons's motion, UFCW largely reiterates its contention that the court lacks jurisdiction under section 301, and thus, has no power to transfer venue or dismiss the action.

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), the court construes the complaint in the light most favorable to the non-moving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-8 (9th Cir. 1996).  The court must accept all well-pleaded facts as true and draw all reasonable inferences in

ORDER – 6

favor of the plaintiff.  <u>Wyler Summit P'ship v. Turner Broad. Sys., Inc.</u>, 135 F.3d 658, 661 (9th Cir. 1998).  Dismissal for failure to state a claim should not be granted "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Id</u>. (internal quotations and citations omitted).

The court concludes that UFCW does not state a claim for which this court can grant relief.  Where, as here, section 301 preempts a state law claim because it requires the court to interpret a labor contract, "that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law."  <u>Lueck</u>, 471 U.S. at 220.  The court concludes that, as a non-signatory to the underlying CBAs, UFCW may not assert a malicious prosecution claim against Albertsons under section 301.[3]  <u>Cf</u> <u>Wynn v. National Broadcasting Co.</u>, 234 F. Supp. 2d 1067, 1120 (C.D. Cal. 2002); <u>Teamsters Local Union No. 117 v. Sysco Food Services of Seattle Inc.</u>, No. 05-113L, 2005 WL 1643890 *7 (W.D. Wash., July 11, 2005).  At bottom, section 301 provides a cause of action for breach of contract; it is not a basis for a federal common law tort claim.  <u>Wynn</u>, 234 F. Supp.2d at 1120; <u>Sysco</u>, 2005 WL 1643890 *7.

Because the claim does not survive as a section 301 claim, the court concludes that UFCW's sole remedy is an unfair labor practices charge under the National Labor Relations Act ("NLRA").  It is well-settled that an employer is subject to such a charge if, in retaliation for NLRA-protected activities, the employer brings an objectively baseless lawsuit.  <u>See</u> <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 744 (1983).  Nevertheless, UFCW contends that the NLRA does not preempt its malicious prosecution claim.  In support of this contention, UFCW notes that certain torts of threatened violence

---

[3]The court notes that, even if it construed a malicious prosecution claim by a non-signatory as cognizable under section 301, it is likely that UFCW's claim would be time-barred.  <u>See</u> <u>DelCostello v. International Bhd. of Teamsters</u>, 462 U.S. 151, 155 (1983).

ORDER – 7

(which, in some circumstances, include malicious prosecution) traditionally fall outside of the NLRB's exclusive jurisdiction. See Radcliffe v. Rainbow Const. Co., 254 F.3d 772, 785 (9th Cir. 2001) (reasoning that just because the conduct in question could constitute an unfair labor practice, the existence of the NLRA remedy did not "inevitably cause preemption"). In Radcliffe, for example, the Ninth Circuit held that union representatives could bring a malicious prosecution claim against a subcontractor who subjected them to a citizen's arrest for trespass and prosecuted them for refusing to leave the job site. Id. at 776, 787.

The court finds the malicious prosecution claim in Radcliffe inapposite to UFCW's claim. In Radcliffe, the Ninth Circuit paid particular attention to the similarity of the claim to those involving threats of violence and to the unique property interests underlying the trespass claim. Id. at 785-87. Accordingly, the court concluded that the claim "touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of power to act." Id. at 785 (quoting San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 243-44 (1959)). UFCW's allegations, by contrast, do not touch on such local matters. Rather, UFCW alleges that Albertsons brought the Idaho suit in order to "retaliate against and punish [UFCW] for redress of its grievances about off-the-clock work by Albertsons' employees." Compl. ¶ 3.1.2. This claim directly implicates the kind of conduct covered by the NLRA, and is thus preempted. See Garmon, 359 U.S. at 244 (holding that when a state seeks to regulate activities that are protected under the NLRA, state jurisdiction must yield).

The court is mindful of the "paradox" of simultaneously preempting and barring UFCW's claim under section 301. See Covenant Coal, 977 F.2d at 899 (holding that "section 301 of the LMRA bars a federal cause of action for tortious interference with contract, yet simultaneously preempts the identical state law cause of action"). Of

ORDER – 8

1   course, this determination does not leave UFCW without a remedy; indeed, it is currently

2   proceeding with an unfair labor practices charge before the NLRB.

3   ## IV.  CONCLUSION

4       For the reasons stated above, the court DENIES UFCW's motion to remand (Dkt.

5   # 13) and GRANTS Albertsons's motion to dismiss (Dkt. # 3).

6       Dated this 10th day of October, 2006.

7

8

9

10  JAMES L. ROBART
    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 9